IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ROBERT K. ELLIS,                     )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          Civil Action No. 5:10-0898
                                     )
DAVID BERKEBILE, Warden,             )
FCI Beckley, *et al.*,               )
                                     )
            Defendants.              )

## PROPOSED FINDINGS AND RECOMMENDATION

On July 13, 2010, Plaintiff filed an Application to proceed Without Prepayment of Fees and

Costs (Document No. 1.) and a Complaint naming Warden Berkebile, a dentist and a dental assistant

as Defendants and stating that he had "been suffering in pain and anguish for over 3 months with

tooth aches, infections, broken teeth with sharp metal hanging down, and cavities."[1] (Document No.

3.) Plaintiff indicates that for several weeks prior to filing his Complaint he attempted to see the

dentist and have his significant dental problems fixed to no avail. Plaintiff indicates that the Bureau

of Prisons has recognized that emergency dental care should be available at all times and there

should be one dentist per 1,000 inmates, but there is only one dentist for more than 2,000 inmates

at FCI Beckley. Plaintiff requests immediate access to another dentist besides the dentist whom he

names as a Defendant or transfer to another institution where there is greater access to dental

services. Plaintiff further requests monetary damages for the pain and suffering and mental anguish

---

[1] Plaintiff also complained about the difficulty which he experienced in obtaining treatment for his dental problems in *Ellis v. Berkebile*, Civil Action No. 5:10-0931, which he initiated under 28 U.S.C. § 2241. On August 6, 2010, the District Court dismissed Plaintiff's Section 2241 Petitioner in that case without prejudice because Plaintiff had failed to exhaust administrative remedies. *Id.*, Document Nos. 14 and 15.)

which he had experienced as a consequence of Defendants' failure to fix his dental problems. Plaintiff also requests that the Court enjoin Defendants from retaliating against him for filing complaints against them administratively or in this matter. In this latter regard, Plaintiff indicates that his counselor threatened that if he continued to file complaints, he would never see the dentist. Plaintiff indicates in his Complaint that he did not exhaust administrative remedies prior to filing it. He indicates that he submitted an informal complaint to his counselor. (Document No. 3, p.3.) Plaintiff attaches to his Complaint copies of informal "Inmate Request to Staff" forms dated April 13 and 27, May 4, 18 and 25, June 1, 8, 22 and 30 and July 6, 2010, indicating his complaints about his dental problems. Plaintiff also attaches a copy of his June 30, 2010, correspondence to the Warden stating that "[d]ue to there being one dentist at this institute of over 2000 inmates, I have been having to suffer pain going on three months now (I have sick call slips dating back three months for every week). I was seen 4 weeks ago with several teeth needing pulled, but they said they could only do one at a time. It would seem that I would be put on the next call-out but it takes another 8 weeks to get seen again. At Jesup and Manchester you were seen the day of the sick call. Would you please help me get my teeth fixed so I will not have to keep enduring this pain."

On July 14, 2010, Plaintiff filed three Affidavits. (Document No. 5.) By his Affidavits, Plaintiff relates what transpired as he complained to the dentist and the dental assistant whom he names as Defendants and his counselor. Plaintiff states that his counselor spoke with him in response to his informal complaint telling him that FCI Beckley was in the process of hiring another dentist and asking him if he wanted to appeal. Plaintiff states that he said that he wanted to appeal, and his counselor gave him a BP-9 form and threatened that he would never see a dentist if he proceeded with it. On July 27, 2010, Plaintiff filed three further Affidavits. (Document No. 6.) The first is his

2

including his picture showing him with one front upper tooth missing and a pin hanging down and another broken  and indicating that the picture was taken on July 16, 2010. The second and third are the Affidavits of inmates Mr. Ronald Bowen and Mr. Dwight Ashe indicating that they knew of Plaintiff's complaints about his dental problems and attempts to get them fixed and had heard other inmates complaint that they were not able to get treatment for their dental problems.

On August 25, 2010, Plaintiff filed a Motion to Amend with Additional Defendant to name his counselor, Mr. John Grimes, as a Defendant. Beyond the claim that his counselor threatened him as stated above indicating that he would deny him treatment of his dental problems, Plaintiff claims that his counselor retaliated against him for proceeding administratively and in Court by yelling at him and changing Plaintiff's job at FCI Beckley. (Document No. 8.)

On September 14, 2010, Plaintiff filed a Motion to Amend with Addition of Defendants to name the Assistant Health Service Administrator, Mr. Bailey, Acting Warden Harmon and the Department of Justice/Federal Bureau of Prisons as Defendants. (Document No. 9.) Plaintiff alleges that Mr. Bailey "did on August 16, 2010, with deliberate indifference, refuse plaintiff medical treatment and conspired with all the defendants named, to attempt to coerce plaintiff to seek treatment from the defendant who had already committed Eighth Amendment Constitutional violations against him . . . ." Plaintiff alleges that Acting Warden Harmon was deliberately indifferent to his serious dental problems "by prolonging the pain and anguish, and not addressing plaintiff's Remedy Request as policy requires, finally even denying getting the Administrative Remedy Request at all. That he did conspire to cover up the Eighth Amendment Constitutional violations committed against the plaintiff with medical/dental departments and staff . . .." Plaintiff names the Department of Justice/Federal Bureau of Prisons as Defendants indicating that he

3

processed his claim administratively as a tort claim and received a denial with leave to sue in the United States District Court on September 8, 2010, and alleging that the agencies did not attend to his claims administratively in accordance with their policies thereby permitting the violation of his constitutional rights to continue. Plaintiff attaches copies of correspondence between him and the Warden respecting his claims, his administrative tort Claim for Damage, Injury or Death and the September 1, 2010, response of the Bureau of Prisons denying his claim and notifying Plaintiff that "you have six months from the date of mailing of this letter to bring suit in an appropriate United States District Court, should you wish to do so." Plaintiff also filed a Motion for Supplemental Statement of Recent Changes Concerning the Progress of the Administrative Remedy Process (Document No. 10.) attaching copies of his administrative complaints and correspondence about his significant dental problems.

## **DISCUSSION**

Because Plaintiff has alleged that Defendants were deliberately indifferent to his serious dental problems, it is clear that he is claiming that Defendants committed violations of his constitutional rights under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Additionally, it appears from the record that Plaintiff has intended to file a claim under the Federal Tort Claims Act [FTCA]. Having examined the record, the undersigned finds that it is apparent from the face of Plaintiff's Complaint and copies of documents which he has submitted that Plaintiff failed to exhaust administrative remedies with respect to his <u>Bivens</u> and FTCA claims prior to filing his Complaint and therefore respectfully recommends that Plaintiff's Complaint be dismissed.

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate

violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472-74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18-21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19-20, 100 S.Ct. at 1471-72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the

Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also</u> <u>see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaint, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. <u>Id.</u>, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. <u>Id.</u>, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. <u>Id.</u>, § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response.

9

Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

The Federal Tort Claims Act on the other hand is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. *See* 28 U.S.C. § 2675(a)[4]. *See also* Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (*citing* Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986), Muth v. United States, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the Federal Tort Claims Act, the

---

[4]28 U.S.C. § 2675(a) provides that

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11[5] and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the Federal Tort Claims Act is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

Copies of documents attached as exhibits to Plaintiff's Complaint (Document No. 3.), Motion to Amend with Addition of Defendants (Document No. 9.) and Motion for Supplemental Statement of Recent Changes concerning the Progress of the Administrative Remedy Process (Document No. 10.) indicate that beginning in April of this year, Plaintiff submitted Inmate Request to Staff forms, communicated with the Warden and submitted a BP-9, an administrative complaint to the Regional Office, an objection to the Office of General Counsel and a   Standard Form 95

---

[5] 28 C.F.R. § 14.2(a) provides that

a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . for personal injury . . . alleged to have occurred by reason of the incident[.]

Claim for Damage, Injury, or Death initiating an administrative tort claim as follows:

April 13          (Inmate Request to Staff) I broke my front tooth off. There is a steel pin hanging down and it keeps catching my lip. Would you please put me on dental sick call to get this fixed.

April 27          (Inmate Request to Staff) My front tooth is broken off w/ steel pin sticking out and I have cavities. Would like to save the few teeth I have left.

May 4             (Inmate Request to Staff) My tooth broke off again plus 3 cavities.

May 18            (Inmate Request to Staff) I have several bad teeth needing fixed plus the broken tooth.

May 25            (Inmate Request to Staff) Bad tooth ache.

June 1            (Inmate Request to Staff) I need two teeth pulled.

June 8            (Inmate Request to Staff) Teeth hurt, need two pulled, also two cavities and a broken tooth.

June 22           (Inmate Request to Staff) Need teeth pulled.

June 30           (Inmate Request to Staff) I need antibiotics and a medical idle for aching, painful, infected teeth that need attention.

                  (Memo to Warden) Due to there only being one dentist at this institution of over 2,000 inmates, I have been having to suffer severe pain going on three months now (I have sick call slips dating back 3 months for every week). I was seen 4 weeks ago with several teeth needing pulled, bu they said they could only do one at a time. It would seen like I would be put on the next call-out but it takes another 8 weeks to get seen again. I don't understand. At Jesup and Manchester you were seen the day of the sick call. Would you please help me get my teeth fixed so I will not have to keep enduring this pain.

July 1            (Inmate Request to Staff) I am seeking an informal resolution of the under-staffing of the Dental Department. * * * There are over 2,000 inmates at the Beckley institution and only one dentist. The camp is suffering the most with only one dental sick-call a week and which is backed up 6 to 8 weeks. I personally have had to endure pain several weeks before getting treatment. There seems to be no "emergency dental treatment" whatsoever. This institution having mostly drug offenders for the RDAP, and the known effects that drugs have on teeth, make the number of dental needs extremely high and with 2,000 inmates the staffing of another dentist should be justified. Every staff member's comment when confronted

12

with a complaint is "we have only one dentist for 2,000 inmates. I respectfully request that another dentist be added to staff to meet the needs of the Beckley Institution.

July 6        (Inmate Request to Staff) Need antibiotics and teeth pulled.

July 9        (Memo to Warden) This is my second e-mail to the Warden. Today, Friday July 9, 2010, a normal work day and the only work day of the week for the dentist at the camp, I told Dr. Hughes my tooth was killing me and asked if he could pull it today. He said nope, nope, I'll get to it whenever I can, Mr. Ellis. Program Statement P6400.02 under "emergency dental care", includes treatment for severe dental pain, and extraction of non-restorable teeth. Emergency dental care will be available to all inmates on a 24 hr. basis. Emergency dental care is of the "highest priority" and will be provided. Due to time limit for e-mail, this is part one of a two part e-mail to the warden.

July 10       (Memo to Warden) Part two of email to Warden. Policy states there should be one dentist to every 1,000 inmates. There are over 2,000 inmates at Beckley and those are mostly drug offenders due to the RDAP program. It is well known of the effects drugs have on teeth so the number of dental needs are greatly increased and should justify a second dentist. The authority to fill positions is held by the institution's Warden based upon request justifying the need for staffing. I have been suffering pain week after week because of failure of the institute to meet policy concerning high priority emergency dental care and routine dental maintenance to prevent these emergencies. I respectfully request a second dentist be added to the staff.

July 12       Plaintiff submitted Request for Administrative Remedy to the Regional Office.

July 16       Plaintiff submitted Standard Form 95 Claim for Damage, Injury, or Death initiated administrative tort claim.
              Regional Office rejected Plaintiff's Request for Administrative Remedy because he submitted it to the wrong level and did not attach a copy of a BP-9 and the Warden's response to it.

July 19       Plaintiff submitted an objection to the Regional Office's rejection of his Request for Administrative Remedy to the Office of the General Counsel.

July 27       (Memo to Warden) Dear Acting Warden Harmon. On July 19, 2010 I placed a BP-9 addressed to you in the institutional mail box. Due to the legal contentions between Dr. Hughes and myself and the urgency of needing to be relieved of physical pain from dental problems, by treatment from an outside source or transfer to Manchester/McCreary Ky Camps for such treatment, I would not have expected you to be delaying a response this long. May I expect any help from administration for this prolonged continuing pain.

13

| | |
|---|---|
| July 29 | (Memo from Warden) FCI Beckley is actively recruiting a second dentist. The dental department has your requests and you will be scheduled. Your records reveal you have been seen by the dental department 7 times since August of 2009. |
| August 14 | (Memo to Warden) Regardless of the number of times your record seems to say I saw the dentist, the problem is that I have a Bivens against Dr. Hughes in Court and other legal concerns, for refusing me emergency dental treatment on July 7, 2010. I cannot allow Dr. Hughes to treat me under these circumstances for fear of retaliation on his part. I have two abscessed teeth, two broken teeth, and cavities. I am in pain and the only resolution I can see is to be granted an immediate transfer to the Manchester or McCreary Ky Camp where I can receive competent dental treatment. |
| August 17 | (Memo from Warden) Please follow the appropriate sick call procedures for you complaints so that your dental needs can be addressed. You may seek medical sick call if necessary. Dr. Hughes is a professional, and all FCI Beckley Health Services staff treat inmates professionally and according to their medical needs, without regard to any complaints the inmates may make against them. Please note that any refusal of medical or dental care on your part will be documented accordingly in your chart. At this time you do not meet the criteria for a medical transfer to another facility. |
| August 24 | (Memo from Warden) On July 19th a BP-9 concerning dental emergency along with a rejection from Regional and a letter of objection and protest of institutional level to General Counsel was placed in the Camp mail box addressed to Acting Warden Harmon. It was of an emergency nature. I have not received any notice if a 20 day extension. May I expect an answer by August 30th which is the 20 days plus 20 days extension deadline. |
| August 30 | (Memo from Warden) You submitted administrative remedy #598754-R1 on 7-15-2010 directly to the regional office. It was rejected and returned on 7-16-2010 for the following reasons: You submitted your administrative remedy to the wrong level. You did not submit a copy of your institution administrative remedy (BP-9), because you did not file an administrative remedy to the institution, you filed directly to the regional office), and you were told to re-submit your administrative remedy at the right level within 10 days of the date of your rejection. As of 8-28-2010, your request for Administrative Remedy (re-submission) has not been received by this office. You must file your request through your Unit Team, it cannot be placed in the mail. |
| September 1 | Bureau of Prisons denied Plaintiff's administrative tort claim notified Plaintiff that "you have six months from the date of mailing of this letter to bring suit in an appropriate United States District Court, should you wish to do so." |

Plaintiff acknowledges in his Complaint that he did not exhaust administrative remedies prior to

filing it, and copies of documents indicating Plaintiff's administrative complaints confirm that Plaintiff did not complete the administrative processing of his <u>Bivens</u> claim prior to July 13, 2010, when he filed his Complaint through the Office of the General Counsel. Plaintiff submitted his Standard Form 95 Claim for Damage, Injury, or Death initiating administrative tort claim on July 16, 2010, three days after he filed his Complaint. He clearly did not complete the administrative process with respect to his tort claim prior to filing suit. Plaintiff therefore did not exhaust administrative remedies with respect to his <u>Bivens</u> and FTCA claims prior to filing his Complaint, and his Complaint should be dismissed. It appears that Plaintiff exhausted administrative remedies with respect to his FTCA claim on September 1, 2010. Plaintiff is therefore entitled to file an FTCA action naming the United States as Defendant no later than March 1, 2011. His FTCA claim herein should therefore be dismissed without prejudice.

## <u>PROPOSAL AND RECOMMENDATION</u>

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1.), **DISMISS** Plaintiff's Complaint (Document No. 3.) without prejudice and remove this matter from the Court's docket.

Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and

Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: October 22, 2010.

R. Clarke VanDervort
United States Magistrate Judge